Thank you. Good morning. I'd like to reserve three minutes for rebuttal, if I might. You may. Thank you. May it please the court, opposing counsel, my name is Robert Hager, and I along with co-counsel Dan Buderi represent the City of Garfield Heights, Ohio, and its Building Commissioner, William Worvey. The primary issue before the court is Garfield Heights Ordinance 1140.362, and whether that ordinance is content neutral or content based. And if it's content neutral, whether it represents a reasonable time, place, and manner restriction on speech. A majority view for determining content neutrality, which has been followed by the 3rd, 4th, 6th, 7th, and 9th districts, has been called the practical test, which was adopted by this court in HDV-Greegtown versus the City of Detroit. The minority view, followed by the 5th, 8th, and 11th circuits, applies the more rigid absolutist test. Because the district court followed the minority absolutist test rejected by the 6th circuit in Greegtown, it should be reversed and judgment should be entered for the City of Garfield Heights on its counterclaim declaring the ordinance constitutional. And so content neutrality is the threshold issue. Well, what about the difference, the different treatment outside of the residential area? Are you saying it doesn't matter? We think that the treatment outside the residential area is misunderstood, was misunderstood by the district court, and also in the arguments asserted by the appellee. The reason for this position is that if you look at the commercial area statutes that they refer to, they refer to signage, a temporary sign that is 32 square feet in size, a ground sign which is 65 square feet in size, or a wall sign that's 100 square feet. What was the last one, mall? A wall. A wall. A wall sign, 100 square feet in size. And so in those commercial areas, the ordinance says, separate sections, you're allowed a single sign of that sign if it fits in that category, temporary, ground, or wall. As opposed to the section 1140.361, which deals with political signs, while it is true that it restricts the size and height of political signs to six square feet and no more than four feet tall, there is not a single size limitation. And so if you... There's not a single size... Excuse me, a single sign limitation, a single sign. So you can have more than... You can have many political signs. You can have many. And how many is a flexible determination, which is a good balancing test. It's a reasonable test because you take the frontage of the property, you multiply that by a factor of 1.35, and based upon the size of the lot, it determines how many total square feet of maximum face area a resident is allowed to have on a sign. Of political signs. Of political signs. So you can have more, you can have vote for Smith, vote for Jones, vote for Allen, but you couldn't have go Cards, go Cats, go Hoosiers. Right? Because those would be limited to a single sign. Are we talking about residential or commercial now? I'm getting very confused. Well, that's the important issue here. If we're looking at an as-applied challenge, we're talking residential. If we're looking at the facial challenge, which we think the court also erred by looking at the facial challenge before deciding the as-applied... No, I'm just talking factually. Well... I'm not talking... I'm talking about you started down a line of argument that was distinguished between having one sign of a type of a certain size and being permitted to have multiple... You're calling them political signs, right? That's the category. And you're talking about right now, you're saying that even the frontage limitation applies in a commercial setting. That's correct. Okay. That's 1140.27. That's the ordinance section that I'm referring to. And so in Mr. Wagner's case, as applied to him, based upon his frontage, it was determined that he can have over 181 square feet of total maximum signage, the face area. Not simply one sign that is six square feet. But what's the justification? I mean, let's say you have somebody who says, you know what, thank you. I don't care about 12 issues and I don't care about deleting... I'm not interested in diluting my message. I would like to be able to have one of those very big signs that express my view. And then someone else says, well, that's nice, but I don't have one major commercial view. I have five different views and I'd like to be able to have five little signs. And someone else comes along and says, you know, I'm a big sports fan, and where does that put me? Because as far as I know, I'm neither commercial nor political. On the sports sign, because it's come up a couple of times, there's also personal signs. And there's another section of the statute that deals with personal signs in residential districts. So we're not dealing with that issue here, but the point is... No, I'm talking about, let's go back to the commercial. Somebody owns a store with storefront who's a big sports fan. What can that person do about sports signs? And why does the city care what kind of sign it is? Well, that goes to the intermediate scrutiny analysis that the Supreme Court set forth in Ward v. Rock against racism. It's a three-part analysis that courts have for decades applied to reasonable size and height restrictions on signs. I'm asking you, you seem to have different size and height restrictions based upon the content of the speech. No, not based upon the content of the speech. And that's the very essence of the issue before the court. The category of the speech is important. And so merely because you need to look at a sign to determine if it is a political sign doesn't mean that it is content-based. That is called the inspector must read it rule, which has been rejected by this court. The city has a substantial government interest in aesthetics and traffic and safety. That is clear under Prime Media v. City of Brentwood, this court's precedent. And in fact, the appellee admits at page 24 of their brief that the city has a substantial government interest in traffic, safety, and aesthetics. Let me ask you this. In a certain sense, on its face, I would say it's not completely content-neutral because political signs in residential areas are in fact treated more favorably. That was why I was saying that you can have a series of political signs on your residential lot, each of which is small but collectively is many, many square feet, right? That's the point you make. That's the point that I'm making. But you could not have a series of non-political signs. So in that sense, there is a distinction, but political signs are treated more favorably. Is that fair? Political signs are treated more favorably. At least in the residential. Now, Judge White was starting to raise the commercial areas. And as I understand that, and help me, if you have a really, really long building, then you get a large square footage ability, right? Because there's so many square feet per front foot. But now, if you want to have a really big wall sign in a commercial area, it fits within these limits. Does it matter what the wall sign says? Can it say, vote for Smith or buy beans or go cards? In the commercial area, the wall signs deal with commercial issues. The political sign limitation of six square feet applies in both commercial and residential districts equally. Okay. So there, there is a certain content discrimination, which is that you can have a very large sign on the side of your commercial building that says, drink Coors, but you can't have a very large similar sign that says, vote for Coors. Your Honor, I would submit it is not a content discrimination. It is a size restriction that makes no preference to the content of the message. Wait a minute. I just asked you that, and I thought you gave me a different answer. I thought you just told me that if it were a political sign, it would be limited to the six square feet. I wasn't sure you were right, but that was. That's correct. Political signs under 1140.362 apply in both residential and commercial districts. There's no limitation that they'll only apply to residential districts. You're saying it doesn't discriminate based upon the position taken, but it certainly discriminates based on the content. It only prefers smaller political signs. Although it does say in a window or on the lawn, so at least my example and query by interpretation, you've got a subsection. The .361 says resident signs, and then the political signs is in .362, and it talks about window or lawn. Correct. So it would seem that that wouldn't restrict a sign on the side of a building because it's not in a window and it's not on a lawn. Because that's a residential section. That's why I was a little puzzled by your answers because as a layman reading this thing, I thought the whole idea of restricting signage and size and so on was pretty much to preserve the aesthetics of residence districts, and then you've got these bigger limits in commercial areas. So as I say, I do, A, remain a little puzzled. Are you sticking to the notion that I couldn't have a big political sign on a wall in a commercial building that otherwise met the standards? No, that is not expressly prohibited by the statute. I mean, you're allowed to have wall signs in commercial districts, and it doesn't specifically say that if you have a wall sign, it cannot be of a political nature.  I understand. That's your better argument that all of this is hypothetical and should be an as-applied challenge some other day. What is a ground sign? Does that mean like laid out horizontally on the ground? It's typically mounted on a pole on the ground, or it's a monument, a foundation on the ground. But that's different from a little yard sign. A yard sign is on the ground also. That was why I was puzzled. Correct. Yeah, I understand yard signs to be your typical election signs that you're putting in the yard that are just sort of metal framed. A ground sign is something bigger, right? A ground sign in a commercial district is allowed to be larger. And it's considered for a business. You may have a ground sign for Best Buy or Walmart that is on a main thoroughfare as opposed to a residential sign. Something almost close to a billboard? It may be. Again, within the restrictions, a ground sign could be up to 65 square feet in a commercial district. But the city is entitled to prefer smaller objects over larger objects. It's up to the legislature. My colleagues have any further questions? Okay, you'll have your time for rebuttal. May it please the Court, Kurt Hartman on behalf of the Appellee Frank Wagner. Before directly going to my argument, I do want to address Judge Boggs, your question about what is a ground sign. Because that is actually a defined term. It's defined in 1140.02 subdivision C. Ground sign shall mean any sign excluding a billboard supported by uprights, braces, or base or stem of any material placed upon the ground and not attached to any building. Although if I were being really picky picky, aren't all of these little yard signs, ground signs? I believe they do fall within that definition. I don't think you're being picky. I think you're just applying the definition. I suppose the question is what is an upright brace or stem of any material, which you might well think that the little metal things that the typical sign, you know, just stick it in the ground for mayor would be. Okay. No, that's a good point. I had not read that definition. Look, tell me, to me, as far as your client and the residential areas go, how is the content distinction unfavorable to the political sign? It just seems to me that it is nobody can have a sign as big as your sign, political or nonpolitical, and the proliferation issue favors political. It's not content neutral to me, but it's favorable to political signs. What am I missing as far as that goes? I understand what you're arguing. In the residential district. Right, yes. Because I think if you look at the commercial district, as Judge White indicated, you almost have the inverse pyramid of priorities. That commercial signs are given preferential status over political signs, which the Supreme Court in Metro Media said you cannot have. Although, am I not right that the political limitation, even if you read it literally, only applies to lawns and windows, not to walls? Correct. And Chief Judge Oliver also found that there was some potential content aspect, even about dealing with the political signs, because the limitation in .362 indicates that it has to be removed after the period has expired. It doesn't give a time limit for posting the sign. If it's a religious sign or a sports sign, it has to be removed when relevant. Correct. But if you put a sign saying, you know, go Republicans, go Democrats, unrelated to an election, is there a time limit? And he indicates because the restriction on political signs actually indicates, has this additional requirement that it has to be removed after the event. Issue or event. And you need to read the sign in order to determine what's the applicability of the event. Has the event expired or not expired? Well, but if you just do the read the sign, you couldn't have an ordinance that says, you know, you have to take down inflatable Santas by December 29th. And I don't know that any cases I know of that would have made that unconstitutional, at least not in the non-absolutist circuits. And HDV Greektown, which I do know something about, did pretty much, you know, say that. That we're going to look for some kind of, you know, content bias before we say that any distinction is unconstitutional. Let me address the Greektown case because I think, firstly, the court needs to recognize or consider, is that issue even properly raised? Because before the district court, I mean, the city in its reply brief at page 23 basically says, you know, the district court erred because it failed to subject it to strict scrutiny without considering the holding in Greektown. Problem is, before the district court, the city never even raised Greektown. Never cited it once before the district court. Basically, all they said before the district court was the city doesn't disagree with any particular political message, vote for Smith versus don't vote for Smith, and therefore it's content neutral. So this whole argument that they've developed here before this court, I think, is really an issue that may have been waived by not preserving it below. As this court in Daimler-Chrysler Healthcare Benefits Plans v. Durden, that 448 Fed 3rd 918 said, this court's function is to review the case presented to the district court rather than a better case fashioned after a district court's unfavorable ruling. And with respect to the Greektown decision, I think that's what they're doing. But even on the merits with respect to Greektown, I think this court needs to appreciate, and I think that the controlling precedent for this court is not Greektown, but is instead this court's en banc decision in 2007 of Pagan v. Fucci at 492 Fed 3rd 766. We cited in our brief. That decision, because as well established, one panel cannot overrule a prior panel without intervening en banc or Supreme Court precedent. Similarly, a panel cannot overrule an en banc decision without an intervening en banc or intervening Supreme Court decision. And there has been no intervening en banc or Supreme Court case to change the holding and ruling in Pagan. If you look at Pagan, because Pagan, again, dealt with a situation where it addressed, that dealt with one of these where somebody had posted a for sale sign on their vehicle and had placed it on the street. The ordinance prohibited, quote unquote, any advertisement posted on a vehicle. That was subdivision C of the ordinance that issued there. Any advertisement. Under their argument, under Greektown, that would be content neutral. Because we don't care what the advertisement says. If it says for sale, if it says, you know, Joe the plumber. So any advertisement. And this court, sitting en banc, said that was content based restriction. It ratified the holding of the Supreme Court. At 779 of the opinion, this court en banc stated, the restriction on advertising does depend upon the content of the speech. Namely, the ordinance draws a distinction between promotional speech and speech asserting belief or fact. The Supreme Court has made clear that any regulation that requires reference to the content of speech to determine its applicability is inherently content based. So with all due respect to the decision. But then the issue, and of course that was in a quote commercial speech context. Correct. And I really said I would agree with you that I would call this content based. But then the question is, does that end the issue? And that's where I thought the circuit split was. And obviously in HDV Greektown, you know, you would have to read the signs to tell the difference between the, you know, strip clubs and some other kinds of signs. No, I think the circuit split that's developed, you know, and I do know there's actually a pending petition before the Supreme Court on that issue. Develops basically whether or not, looking at the sign and having to read the sign enough to make it a content based restriction or not. And I think Pagan says that makes it a content based restriction. And even with respect to Greektown, if you look at Greektown, its whole premise relies upon a four circuit case that paraphrased the Supreme Court's case in Hill versus Colorado. Hill versus Colorado, I think if you look at those facts, demonstrates really when it does not become content based. Hill versus Colorado dealt with basically a statute that prohibited within 100 feet of a healthcare facility knowingly approaching somebody within 8 feet. That's the abortion clinic, which there's a case up before the Supreme Court now as well on that. But basically that statute in Hill didn't identify any message. It prohibited the distribution of any leaflet, any handbill, sign or engage in oral protest. What if it doesn't matter? Putting aside the commercial, what if it doesn't matter? What if you have three identical ordinances and they are just simply divided into the type of sign so that people who are looking for that information can find it that way? So it says, Ordinance 1 says advertising in a residential area can only be two by three. And then Ordinance 2 says sports signs or other non-commercial speech can only be two by three. And then there's another one that says political signs can only be two by three, but whereas you can only have one of the others, you can have four of these. So you have to look at the sign to know. Correct, correct. And I would agree with you. I don't think that one, the size limitation is uniform. We don't have that in this case when you pull in the commercial properties. Okay. Well, let me ask you this. Do you have any constitutional objection to the residential aspect of this case other than the fact that you have to take it down? Yes, because I think even under a, if you consider under the intermediate scrutiny, the evidence in the record clearly supports that the city did not satisfy its burden of meeting even intermediate scrutiny if you proceed under a content-neutral analysis. The burden for, of what? Justifying any restriction upon First Amendment speech rights. The restriction meaning the size or the, this is what I'm trying to find out. What is infirm with the residential restrictions? I understand you object to having to remove it. What else? In this case, what we're dealing with is subject matter. I'm sorry, go ahead. And I was going to say, you know, the court even in Alvarez last year reiterated that it's not just the viewpoint or the message that is on the board that is offensive. It's also your ideas or subject matter. But is, I mean, correct me if I'm wrong, is the whole, this whole thing started because your guy wanted or did put up a sign that was too big. I mean, that's the challenge that we have here is he wants to put up a sign that is bigger than the size limitation for any kind of sign in his residential area. That's what I'm asking. Is that your objection? Yes, that is also our, yes. But also, isn't that, that is the objection. Everything else is legalism to let him put up the sign that says Mahoney-Baloney. That's bigger than the size limitation. So what is the basis of that objection? Are you saying that a uniform, this is what I'm trying to get at, a uniform sign limitation. It doesn't matter what the content is. It just says any sign in a residential district cannot be larger than six square feet. Yes, even under a content neutral, I think, premise. So that's unconstitutional. Because the record evidence before the district court established that that did not satisfy intermediate scrutiny. That it was not narrowly tailored to serve a significant governmental interest. That it did not actually advance the putative interest of aesthetics and traffic safety. Because the evidence in the record, basically we tendered on that. It's interesting, if you look at the preliminary injunction stage, Chief Judge Oliver indicated that he thought this ordinance was content neutral and proceeded there. So we presented the case as content neutral at summary judgment. He said after further analysis, he revisited that conclusion. And I think correctly came that way. So you had proofs. What were your proofs on this subject about its ineffectiveness? We offered three expert witnesses, Jonathan Walker, Flum, and Kolaris. Basically documents 21, 22, and 23 in the district court record. Mr. Walker addressed the aesthetic interest being claimed by the city. Flum addressed the traffic aesthetics. And Kolaris talked about the communicative aspects of the sign. And with respect to these two by three or six square foot signs, Mr. Kolaris basically, and I summarize it in our brief, basically said you have to have a size of a certain size that you can actually communicate your message. I mean, you get a sign so small, it's illusory to claim you're even communicating. And his professional opinion, which was undisputed, was that the two by three to six square foot signs did not allow for meaningful communication of a message, and especially if you start putting multiple signs out there. Well, could you have constructed a sign that consisted of 12 parts? Yes. They actually argued before the district court, probably not a transcript, but that you could actually take this four by four sign that our guy put up, saw it, and because they weren't physically connected, that was four signs, and therefore you could do your message or you could do a little drive down your one. The expert also, didn't he say things like more signs are more distracting than less signs? Yes. And then he said little signs are more distracting than big signs. Yes, he did. I'm not sure, I don't know. That's the evidence in the record. It's undisputed. The only evidence they put forth in terms of experts were lawyers who opined a legal opinion that these statutes were constitutional, which is not a proper subject. Although I guess a lot of, at this level of scrutiny, there are things that say you can apply common sense and so forth. Maybe some of us have even put up political signs in the past as to how visible they are. But again, we developed it in the record. If you can do that, then don't you have a reasonable alternative? You can say, well, you shouldn't have to. But if it's that important to your client to get this message out, then why didn't he just arrange his signs in a fashion that it delivered the message? Because it would have been a disjointed sign, a disjointed message. And again, the testimony, the expert evidence is that breaking the signs apart into smaller signs. No, no, that's not what I mean. Okay, I'm sorry, Judge. Do exactly that. You cut it into eighths and you just stack them. Well, you don't even have to do that. This particular sign would be legit as just four signs, one above the other a fraction of an inch apart, right? Yes. Yes. You do the math because he's four times too big. All he has to do is come in under four feet. So if he's four feet high, six feet wide, he would have that. Which is what his sign was, right? It was four feet high, six feet wide. Four by four. Oh, it's even smaller than that. Okay, four by four. He only has to cut it into three pieces. Yes. Do the math. Better math. I think what you're doing, what it demonstrates, though, is the arbitrariness of the number. That it does not actually advance the interest of aesthetics to limit it to six square feet. If I can do this little gamesmanship, it does not actually advance any significant goal. Well, but that's with the, you might say, political favoritism overlay. That is, as I take it, the city's position here is kind of, you know, look, we like aesthetics, but we know that politics is important. The First Amendment's important. So we're going to give you some leeway on political signs. Now, that is content-based, in my view, because you can't say, you know, read Emily Dickinson in quite the same way. But I'm not sure that makes it unconstitutional. That's really the issue is, is that kind of content-basedness unconstitutional? But I would argue that even if you're under the content-neutral set, does that actually advance, demonstrate that it advances these government? And when you look at the reports, when you look at the photographs, and we put a few of them in our briefs, it's cluttered when you have all these signs versus the single sign. And then the reports say that undermines traffic safety because people are more focused on it than that. So I think record evidence supports it. So I'd ask you to affirm. Thank you, Your Honor. Thank you, Counsel. You'll have your three minutes for rebuttal. Thank you, Your Honor. In Michigan State AFL-CIO v. Miller, this court held that the use of subject-based categories does not automatically render an ordinance content-based. And in Brown v. Carey and other cases, the distinction is whether or not there's a sensorial intent along with the subject matter base. And here the record is devoid of any evidence of a sensorial intent to tell Mr. Wagner to take down his message. In fact, the letter that was sent by Mr. Wagner. Didn't the city council, councilman, councilwoman, was the one who ratted him out? Well, yes, it was a city councilwoman who reported it and the inspector went over. But when he sent him a sign, when he sent him a letter about the sign, he didn't say, you can't say that. You're saying the city didn't have sensorial intent, though the councilwoman may have. Well, I'm sure she was in disagreement with the message, which is what free speech is all about. She has the right to disagree. But the point is, he was not told to remove the sign. He said, please conform the sign to the reasonable size restrictions. And so there was no meaningful preference for one type of political speech over another or for political speech versus a different type of speech. It was just a size and height restriction. And in Midwest Media versus Erlanger, there is no need for the city to prove that traffic safety actually motivated the enactment of this statute. The purpose and the intent are set forth. That's sufficient. So this issue about aesthetics and the expert witnesses is completely irrelevant because whether or not they're experts thinks it's aesthetically pleasing. It's very clear in the precedent before this court that size and height restrictions may regulate only the non-expressive components of the signs. And that is what we have here. But what if something is so small it isn't expressive at all? Well, then I would say that that might be going too far in the balance. But this particular size sign, he didn't even consider other alternatives that he had available to him. So there are cases that Brown versus Cary where it was a five square foot sign that was upheld or maybe a six square foot. So who's to say? I mean, actually, when you think about it, you're talking about two feet by three feet, right?  But if you have any message that you want to get out, that's not a really effective size to do it. Well, again, you can use multiple signs and it's a question of ample alternatives under the third prong of the intermediate scrutiny test. And, in fact, there's a case on point on that issue, Your Honor. Colby versus Baltimore, the District Court in Maryland in 2010, found that the ability to post multiple smaller signs was an ample alternative channel of communication. It's on point with this case. The record at page ID 936, 937 indicates that Mr. Wagner indicated during his deposition that he never even considered the alternative of using multiple. You're having to take it down. I mean, why should you have to take it down? Because it exceeds the reasonable time, place, and manner of restrictions that have been imposed by the city council. But why is it reasonable? Why can't you? It's reasonable under the intermediate scrutiny test. By Reagan for President signs. Right. But if it's meaningful to you, what difference does it make? The city has a substantial government interest in aesthetics and traffic safety. They have to have some regulations. No, because then you can put another one out tomorrow. It doesn't, I mean, then someone's going to. You're talking about the durational intent? Yes. Oh, the durational intent is very, first of all, that's not at issue in this case, but it's when the issue is resolved or the purpose has been fulfilled. So there's no claim in this case that Mr. Wagner wanted to keep a sign up for a longer period of time, but we said, no, the purpose has been fulfilled. You must take it down today. Who gets to decide if the purpose has been fulfilled? Well, if a city council would come in and say that we think the purpose has been fulfilled and tell someone hypothetically to take it down, they would have the right to object. You presumably have some kind of city code. I mean, the city council doesn't have to do it itself if it says, you know, repeal Dred Scott. Correct. Okay. Well, why should you have to take that sign down? You don't necessarily need to, Your Honor. If it's an issue that is a political issue that you feel strongly about and it's still something that goes on, there's nothing in the ordinance that would make you take it down because the purpose has never been fulfilled. Okay, so if you're saying sell the post office, you can keep that up forever because the government hasn't sold the post office yet. Yes, sir. Okay. Anything else on that? All right. Thank you. The case will be submitted. The remaining cases will be submitted on the briefs, and you may adjourn court.